UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HAROLD SIEFKEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15-cv-00209-GZS |
| ) | |
| GROUP HOME FOUNDATION INC., ) | |
| d/b/a GHF INC, ) | |
| ) | |
| Defendant ) | |

### MEMORANDUM OF DECISION ON MOTION FOR ATTACHMENT AND ATTACHMNENT ON TRUSTEE PROCESS

In this action, Plaintiff seeks to recover from Defendant funds that Defendant contributed to a deferred compensation plan for his benefit. Plaintiff's claims arise under the Employee Retirement Income Security Act (ERISA).

The matter is before the Court on Plaintiff's Motion for Attachment and Attachment on Trustee Process (ECF No. 3), through which motion Plaintiff seeks an attachment in the amount of $192,859.89. [1] Following a review of the record, and after consideration of the parties' arguments, the Court grants the motion.

### FACTUAL BACKGROUND

According to Plaintiff's complaint, Plaintiff worked for Defendant as its executive director continuously from 1978 until October 2013, when Plaintiff retired on goods term. (Complaint ¶ 7.) In 2003, Defendant adopted a deferred compensation plan pursuant to section 457(b) of the Internal Revenue Code. (*Id.* ¶ 10.) The Plan provides that a "Participant who is in the employment

---

[1] In his motion, Plaintiff asserts the amount as $192,859.89, while in his declaration he states the amount as $192,859.98.

of the Employer at his Normal Retirement Date shall have a nonforfeitable interest in 100% of his Account." (*Id.* ¶ 15.)

The Plan permits a participant to withdraw the account upon retirement in a single lump-sum payment or in installments. (*Id.* ¶ 17.) The Plan provides that each participant is a general creditor of Defendant, with "the status of an unsecured general creditor of the Employer and the Plan constitutes a mere promise by the Employer to make benefit payments in the future." (*Id.* ¶¶ 19 – 20.) Additionally, the Plan states that all investments in participants' accounts are "subject to the claims of general creditors of the Employer," and that "[a]ny funds which may be contributed and invested under the provisions of this Plan shall continue to be subject to the unsecured general creditors of the Employer." (*Id.* ¶ 21.)

Following his retirement, in November 2014, Plaintiff submitted a payment election form requesting payment in a lump sum. (*Id.* ¶ 26.) Defendant denied Plaintiff's claim for benefits in a letter dated January 2, 2015, stating that Defendant's contractual obligation to its other ("primary") creditors prohibited the disbursement of the funds in Plaintiff's account without the approval of the other creditors. (*Id.* ¶ 30; Complaint Ex. C, ECF No. 1-3.) Plaintiff timely requested an administrative review of the determination in February 2014. (Complaint ¶¶ 31 – 32.) Defendant never responded to the request. (*Id.* ¶ 33.)

Until early 2015, Defendant held Plaintiff's account funds in a separate 457(b) investment account. (*Id.* ¶ 23.) Plaintiff asserts that the value of the 457(b) investment account, as of January 26, 2015, was $192,859.98. (Declaration of Harold Siefkin, ECF No. 4, ¶ 28.) On January 27, 2015, Defendant closed the investment account and transferred the funds to an account securing a line of credit with Camden National Bank. (Complaint ¶ 34.)[2]

---

[2] In support of his motion for attachment and attachment on trustee process, Plaintiff filed a declaration in which he attests to all of the allegations contained in his Complaint. (Declaration of Harold Siefkin, ECF No. 4.) With respect

In opposition to the motion for attachment, Defendant maintains that the contributions to the Plan were inconsistent with the relevant vote of the Board of Directors regarding Plaintiff's compensation. According to Salvatore Garozzo, Defendant's current executive director, by memorandum dated September 22, 2003, Plaintiff proposed to cap his salary increases at $2,600 per year ($50.00 per week) in exchange for a contribution from Defendant to the nonqualified deferred compensation plan equal to ten percent of Plaintiff's annual salary. (Declaration of Salvatore Garozzo, ECF No. 13-1 ¶ 8.) The proposal was accepted by the Board at the monthly board meeting on October 20, 2003. (*Id.* ¶ 9.) Following the Board's vote, Plaintiff submitted annual payroll change forms that called for direct contributions from Defendant to the Plan of 10% of Plaintiff's annual salary, increased his salary by $50/week ($2,600/year), and also added an extra 10% to Plaintiff's salary. (*Id.* ¶ 10.) The payroll change forms were not subject to direct oversight by the Board. (*Id.* ¶ 11.) [3]

Mr. Salvatore asserts that when he denied, based on the priority of other creditors, Plaintiff's claim for lump-sum payment of the fund in January 2015, he had a good-faith belief that the Defendant owed the benefit accrued under the 457(b) Plan. (*Id.* ¶ 12.) However, at the time, he was unaware that Plaintiff's payroll change forms were inconsistent with the terms of the 2003 board vote. (*Id.* ¶ 13.)[4]

---

to the assertion that Defendant has transferred the funds in his 457(b) investment account to an account securing a line of credit with Camden National Bank, Plaintiff's declaration is made "on information and belief." (*Id.* ¶ 29.) Plaintiff knows of no liability insurance, bond or other security, or of any property or credits attached by other writ of attachment or by trustee process available to satisfy any judgment he may receive against Defendant in this case. (*Id.* ¶ 35.)

[3] Defendant also offers declarations from two board members, who similarly state that a 10% annual salary increase was not authorized. (Declaration of Sharon Goguen, ECF No. 13-2; Declaration of William Webb, ECF No. 13-3.)

[4] Mr. Salvatore does not assert the existence of any insurance, bond, or other security, or identify any property or credits attached by other writ of attachment or by trustee process, that would be available to satisfy a judgment.

3

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 64 and Local Rule 64, the Court applies Maine law when presented with a motion for attachment and attachment on trustee process.[5] To obtain an attachment or an attachment on trustee process, after notice and a hearing, a plaintiff must demonstrate "that it is more likely than not that the plaintiff will recover judgment in an amount equal to or greater than the aggregate sum of the attachment and any insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process known or reasonably believed to be available to satisfy the judgment." M. R. Civ. P. 4A(c), 4B(c). A motion for attachment or an attachment on trustee process must be accompanied by an affidavit or affidavits setting forth "specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and so far as upon information and belief, shall state that the affiant believes this information to be true." M. R. Civ. P. 4A(i), 4B(c).

Plaintiff asserts that Defendant's obligation to pay under the deferred compensation plan is undisputed. Plaintiff argues that "any private agreement between [Defendant] and a third-party secured creditor is not a defense to liability that [Defendant] may wield against its general creditors." (Motion at 2.) Defendant evidently no longer contends that its denial of payment is based on its obligations to other creditors. Instead, Defendant maintains that because between 2003 and 2015, Plaintiff increased his salary beyond what Defendant's Board authorized and "[t]hose salary increases happened to be equal to the amount of the contributions Defendant made to the 457(b) Plan" (Opposition at 3, ECF No. 13), Defendant is not obligated to pay to Plaintiff

---

[5] Because this action presents claims against an ERISA fiduciary, a potential issue is whether attachment proceedings are proper given ERISA preemption principles. The Supreme Court, however, has held that "state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 834 (1988).

the funds requested. According to Defendant, because both the increased salary and the plan contributions were "part of a contract between Defendant and Plaintiff regarding compensation" (*id.*), the fact finder should offset the two amounts[6] (*id.* at 4 & n.2).

Upon review of the record, based in part on the fact that for more than a decade, contributions were made to the Plan without comment by or objection from Defendant, and based in part on the fact that upon Plaintiff's request for payment, Defendant did not challenge Plaintiff's entitlement to the funds, the Court is persuaded that Plaintiff will more likely than not recover judgment for the amount that was in the 457(b) Plan before Defendant transferred the funds to an account securing a line of credit with Camden National Bank. Because the record establishes the lack of any insurance, bond, or other security, and does not identify any property or credits attached by other writ of attachment or by trustee process that would be available to satisfy a judgment, Plaintiff is entitled to an attachment in the amount of $192,859.89.[7]

## CONCLUSION

Based on the foregoing analysis, the Court grants Plaintiff's Motion for Attachment and Attachment on Trustee Process (ECF No. 3) and, therefore, the Court grants Plaintiff an attachment and an attachment on trustee process on Defendant's property in the amount of $192,859.89.

---

[6] Defendant maintains that there was not a meeting of the minds that Plaintiff would receive 10% annual increases in addition to the 457(b) plan contributions.

[7] Defendant's suggestion that an offset is appropriate is unavailing at this stage of the proceedings. If Defendant contends that Plaintiff was overpaid, Defendant presumably would assert a counterclaim, which has not been filed in this case. Defendant's filing of a counterclaim, however, would not affect Plaintiff's entitlement to an attachment as an offset based on a counterclaim is not appropriate. *Casco N. Bank, N.A. v. New England Sales, Inc.*, 573 A.2d 795, 797 (Me. 1990) ("While NES might have demonstrated that it was entitled to an attachment against Casco on its own claim, … it made no motion for an attachment, and even were one made, its possible recovery on that claim could not be considered as an offset.").

## CERTIFICATE

Any objections to this order shall be filed in accordance with Fed. R. Civ. P. 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of September, 2015.